UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Cr. No. 19-20652

v.                                      Honorable David M. Lawson

STEVEN KING,

        Defendant.
_____/

## MOTION FOR ADVERSE JURY INSTRUCTION
## OR TO STRIKE THE TESTIMONY OF RAMI LAZEKI

Steven King, through counsel, moves for an adverse jury instruction or to strike the testimony of Rami Lazeki based on the government's failure to timely disclose material evidence favorable to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150, 154 (1972). In particular, in response to specific requests by defense counsel, government counsel (before and during trial) denied that it had information about the current immigration status of one of its cooperating witnesses, Rami Lazeki. But on the fourth day of trial, Mr. King's attorneys learned that the government possessed, as far back as October 2022, information that Mr. Lazeki had become a naturalized U.S. citizen *after* he met with investigating agents and admitted to healthcare fraud in 2017.

1

Based on defense counsel's research, Mr. Lazeki had to certify to immigration officials in applying for naturalization that he never "committed, assisted in committing, or attempted to commit, a crime or offense" for which he had not been arrested. Mr. Lazeki pled to crimes dating back to February 2015, so it appears that Mr. Lazeki engaged in naturalization fraud and that government counsel has not referred him for denaturalization, an important benefit gained as a cooperating witness. The government belatedly requested Mr. Lazeki's immigration file, but there is no certainty that it will be obtained in time for use at trial.

The government did not meet its obligation to timely turn over favorable evidence to the defense in this case. Mr. King recommends that an appropriate remedy is to strike Rami Lazeki's testimony or, at minimum, to issue an adverse jury instruction, as done in *United States v. Robertson*, No. 17-CR-02949-MV-1, 2021 WL 1923761, at *1 (D.N.M. May 13, 2021). The defense raised this issue with counsel for the government, and the government does not concur.

## Conclusion

Mr. King asks this Court to strike Rami Lazeki's testimony. In the alternative, he asks the Court to issue the above jury instruction as a sanction for the government's untimely disclosure of Mr. Lazeki's immigration status and naturalization documents.

Respectfully Submitted,

FEDERAL DEFENDER OFFICE

/s/ Natasha D. Webster
Natasha_Webster@fd.org

/s/ Benton C. Martin
Benton_Martin@fd.org

Attorneys for Steven King
613 Abbott St., Suite 500
Detroit, MI 48226
Phone: (313) 967-5542

Date: June 6, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Cr. No. 19-20652

v.                               Honorable David M. Lawson

STEVEN KING,

        Defendant.
_____/

**BRIEF IN SUPPORT OF**
**MOTION FOR DISCOVERY OF *BRADY/GIGLIO* MATERIAL**

The government alleges that, from 2013 to 2018, Steven King conspired with James Letko and Rami Lazeki, among others, to defraud Medicare benefits programs through A1C Pharmacies. (R. 1, Indictment, PgID 7.) Trial began May 30, 2023.

Before trial, counsel for Mr. King specifically asked government counsel for any updated information it possessed about Mr. Lazeki's current immigration status. Government counsel responded, "We do not have any immigration documents pertaining to Mr. Lazeki related to his current status."

On the second day of trial, Mr. King placed on the record that government counsel affirmed it did not have updated information about Mr. Lazeki's immigration status. (R. 262, Trial Tr., PgID 2660.) This Court then asked, "Well, do

1

you have any information [about his immigration status] at all?" (*Id.*) Government counsel replied:

> Yes, what was provided in the original reports, which is that at the time he wasn't a citizen. I'm not aware of anything else, and we haven't asked in our recent prep discussions, and hasn't been a part of any sort of plea negotiations.

(*Id.*)

On the third day of trial, it became clear that the government's representation that it was "not aware of anything else" was not true. The government possessed Mr. Lazeki's presentence report, which typically contains immigration information, and so on June 2, 2023, Mr. King moved for its disclosure. (R. 264.) Over the weekend, the government responded and confirmed that it did have updated information about Mr. Lazeki's status from the presentence report, but refused to say what that information was, arguing it was not admissible. (R. 265.)

On the fourth day of trial, during argument on Mr. King's motion, the government revealed that it received the presentence report with updated immigration information eight months ago, in October 2022. The Court ordered the government to produce the information to Mr. King, and thus Mr. King's attorneys learned for the first time on June 5, 2023, that Mr. Lazeki became a naturalized U.S. citizen in July 2017.

2

The July 2017 date is important because Mr. Lazeki had to certify both in his naturalization application and to immigration officials that he never "committed, assisted in committing, or attempted to commit, a crime or offense" for which he had not been arrested. This was through the Application for Naturalization N-400 USCIS form and in any interview with immigration officials.

Mr. Lazeki pled to crimes dating back to February 2015, so it appears he engaged in naturalization fraud and government counsel has not referred him for denaturalization, an important benefit gained as a cooperating witness.

Mr. King asked for further documentation of Mr. Lazeki's application for naturalization and any record of his interview with immigration officials as part of the naturalization process. The government informed Mr. King that it made a request to Immigration and Naturalization Services, but it is unclear when Mr. Lazeki's immigration file will be available.

Later in the day on June 5, 2023, Mr. Lazeki's attorney provided an unsigned, undated naturalization application that shows that whoever completed the application checked "No" next to the box asking if he had ever committed a crime or assisted in a crime. This is not enough.

The government did not meet its obligation to timely turn over favorable evidence to the defense. It knew of Mr. Lazeki's change in immigration status eight

3

months ago and not only failed to disclose it, but also incorrectly told both defense counsel and the Court that it didn't have the information. The naturalization documents the defense now seeks could have been obtained in time for Mr. Lazeki's testimony and cross-examination if government counsel had not incorrectly stated that they did not have updated information about Mr. Lazeki's immigration status.

The Court has many options at its disposal to address this violation and broad discretion. This Court's standard "Order Regarding Brady Materials," entered in every case since enactment of the Due Process Protection Act, "reminds the government of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose evidence favorable to the defendant and material to the defendant's guilt or punishment," and it explains the penalties:

> The failure to do so in a timely manner may result in consequences, including dismissal of the indictment or information, *exclusion of government evidence or witnesses, adverse jury instructions,* dismissal of charges, contempt proceedings, sanctions by the Court, or any other remedy that is just under the circumstances.

*See*, *e.g., United States v. Keels*, No. 23-20085-DML, ECF No. 5, Order Regarding Brady Materials, PgID 11 (E.D. Mich. Jan. 31, 2023) (emphasis added).

Mr. King asks that this Court issue an adverse jury instruction, as done in *United States v. Robertson*, No. 17-CR-02949-MV-1, 2021 WL 1923761, at *1 (D.N.M. May 13, 2021). In *Robertson*, the government failed to disclose critical

4

impeachment evidence, despite being ordered to do so, and yet the defense received the undisclosed material prior to conviction. *Id.*

The court explained that, even if the defense obtains impeachment information before the end of trial, its delayed production harms defense preparation. *Id.* at *16. The court cited the Tenth Circuit, which has explained as follows:

> It would eviscerate the purpose of the *Brady* rule and encourage gamesmanship were we to allow the government to postpone disclosures to the last minute, during trial. As the Second Circuit noted in *Leka v. Portuondo,* 257 F.3d 89, 101 (2d Cir.2001), the belated disclosure of *Brady* material "tend[s] to throw existing strategies and [trial] preparation into disarray." It becomes "difficult [to] assimilate new information, however favorable, when a trial already has been prepared on the basis of the best opportunities and choices then available." *Id. See also United States v. Devin,* 918 F.2d 280, 290 (1st Cir.1990) (explaining that a *Brady* violation would occur if delayed disclosure altered defense strategy and timely disclosure would likely have resulted in a more effective strategy). If a defendant could never make out a *Brady* violation on the basis of the effect of delay on his trial preparation and strategy, this would create dangerous incentives for prosecutors to withhold impeachment or exculpatory information until after the defense has committed itself to a particular strategy during opening statements or until it is too late for the defense to effectively use the disclosed information. It is not hard to imagine the many circumstances in which the belated revelation of *Brady* material might meaningfully alter a defendant's choices before and during trial: how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on. To force the defendant to bear these costs without recourse would offend the notion of fair trial that underlies the *Brady* principle.

*United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009).

To protect against these types of late disclosures, the *Robertson* court decided that the appropriate sanction was an adverse jury instruction—one of the remedies anticipated in this jurisdiction's own standard *Brady* order. The court rejected the harsher sanction of excluding witness testimony because it could not conclude the government acted in "bad faith." *Robertson*, 2021 WL 1923761, at *19. Thus, despite "relatively minimal prejudice to the defense," the Court gave an adverse instruction about the witness in question. *Id.* at *20.

The defense proposes the following comparable instruction for this case:

> You have heard testimony from Rami Lazeki, a government witness in this case. You are instructed that the government did not provide to Mr. King certain immigration documents completed by Mr. Lazeki in which Mr. Lazeki was not truthful in his naturalization application to become a U.S. citizen. In addition, Mr. Lazeki has not been referred for denaturalization by the prosecutors. The defense was entitled to know this information under the United States Constitution because it is relevant to Mr. Lazeki's credibility and whether he has any reasons unrelated to the evidence to testify in a way that is favorable to the government or unfavorable to the Defendant Steven King.
>
> It is ultimately up to you to determine how much weight, if any, to give Mr. Lazeki's testimony. In making that determination, you should keeping in mind that the government did not to produce certain immigration documents relevant to Mr. Lazeki's credibility and motivations in testifying.

## Conclusion

Mr. King asks this Court to strike Rami Lazeki's testimony. In the alternative, he asks the Court to issue the above jury instruction as a sanction for the government's untimely disclosure of Mr. Lazeki's immigration status and naturalization documents.

Respectfully Submitted,

FEDERAL DEFENDER OFFICE

/s/ Natasha D. Webster
Natasha_Webster@fd.org

/s/ Benton C. Martin
Benton_Martin@fd.org

Attorneys for Steven King
613 Abbott St., Suite 500
Detroit, MI 48226
Phone: (313) 967-5542

Date: June 6, 2023

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 19-20652

v.        Honorable David M. Lawson

D-2 STEVEN KING,

        Defendant.
_____/

**CERTIFICATE OF SERVICE**

I certify that, on June 6, 2023, I filed this document using the CM/ECF filing system, which will send notification to opposing counsel.

        /s/ Benton Martin